# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | P. Michael Mahoney |
|---|---|---|---|
| **CASE NUMBER** | 03 C 50462 | **DATE** | 2/22/2005 |
| **CASE TITLE** | Zanfel vs. Helix | | |

**DOCKET ENTRY TEXT:**

For the reasons stated on the attached Memorandum Opinion and Order, Defendant's Motion for Aid in Discovery is granted in part and denied in part. Plaintiff shall produce materials responsive to Request 4 and 5 within seven days of receipt of this Order. Defendant's Motion compelling further production of the Private Placement Memorandum is denied. All disclosures are subject to the parties' agreed confidentiality stipulation.

■ [ For further detail see attached order.]   ■ [ Notices mailed by judge's staff.]

| | Courtroom Deputy Initials: | AM |
|---|---|---|

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| ZANFEL LABORATORIES, INC., an Illinois corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 03-C-50462 ) |
| | ) Magistrate Judge |
| HELIX PHARMACEUTICALS, INC., a Pennsylvania corporation, | ) P. Michael Mahoney ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Zanfel Laboratories ("Zanfel") filed a two count Complaint against Defendant Helix Pharmaceuticals ("Helix") on October 31, 2003, alleging civil conspiracy and seeking to rescind a written release agreement between Zanfel and Helix. Helix has counterclaimed against Zanfel for breach of release, breach of contract, Illinois Sales Representative Act[1] violations, and is seeking to enforce the parties' release agreement or, in the alternative, to rescind the release. This matter is now before the court on Defendant's January 26, 2005, Second Motion for Aid in Discovery.[2] For the reasons stated below, Defendant's Motion is granted in part.

---

[1] 820 ILL. COMP. STAT. 120/0.01, *et seq.* (West 2003).

[2] Defendant originally filed its Motion for Aid in Discovery on August 19, 2004, but the Motion was withdrawn without prejudice on August 25, 2004. On January 26, 2005, Defendant's Second Motion was granted in part and denied in part. Plaintiff was ordered to produce certain documents for attorney's eyes only, as well as a privilege log. A Protective Order was also signed. Apparently, the parties are in need of more aid in discovery as both parties filed Memorandums in Support of and in Response to Defendant's Second Motion for Aid in discovery on February 2, 2005, and February 9, 2005.

1

I.  **Background**

For the limited purposes of this motion, the court uses the background facts relayed in Plaintiff's Complaint. By doing so, the court makes no judgment about the actual truth or accuracy of the facts alleged. Plaintiff Zanfel is a corporation engaged in the business of manufacturing and selling topical poison ivy wash. At all relevant times, Zanfel's CEO was William Yarbrough ("Yarbrough"). Defendant Helix is a corporation that Zanfel contracted with to perform certain marketing and sales services on a commission basis. At all relevant times, Mark Capriani ("Capriani") was the president of Helix. In June, 2003, Zanfel terminated its business relationship with Helix, at which time the parties entered into a general release agreement. The release was allegedly negotiated on behalf of Zanfel by its then president, Robert Knechtel ("Knechtel"). Knechtel, who is also an attorney, ended his employment with Zanfel in July, 2003. During the months leading up to the negotiation and execution of the release at issue, Knechtel and Capriani were allegedly engaged in covert discussions about establishing a new business venture to manufacture and market medical products. Plaintiff now claims that Capriani, acting through Knechtel, fraudulently induced Yarbrough to execute the above discussed release by convincing him that Zanfel needed a release to terminate its contractual relationship and to avoid a two-year contract renewal with Helix, despite the fact that this was not true. Helix alleges Zanfel filed its Complaint to essentially avoid paying Helix monies owed under the release agreement.

II.  **Discussion**

On or about December 9, 2004, Defendant served a supplemental request for production on Plaintiff relating to information discovered during the depositions of Yarbrough, Capriani,

and Knechtel. Plaintiff responded on January 25, 2005, but Defendant found the responses to be inadequate. Defendant filed its motion compelling disclosure of the materials sought in connection with Request 4 (Knechtel Separation Agreement), 5 (Files of Attorney Denis), and 6 (Zanfel Private Placement Memorandum). Each Request is discussed separately below.

### A. Request 4 (Knechtel Separation Agreement)

Defendant seeks a copy of any release or severance agreement between Knechtel and Zanfel. Defendant and Plaintiff concede that the separation agreement is relevant for discovery purposes, but Plaintiff states that a confidentiality statement within the separation agreement prohibits it from voluntarily disclosing the separation agreement and seeks a written order compelling the document's disclosure. The court agrees that the documentation sought in Request 4 is relevant under Fed. R. Civ. P. 26(b). Plaintiff itself has suggested it will promptly disclose the separation agreement at issue if it is so ordered. Thus, this court orders Plaintiff to produce materials responsive to Request 4 within seven days of receipt of this Order.

### B. Request 5 (Files of Attorney Denis)

Defendant seeks copies of correspondence between Attorney Marty Denis ("Denis") and Zanfel, Knechtel, or Yarbrough. Denis was apparently retained by Knechtel to provide legal advice with regard to terminating Zanfel's business relationship with Helix. Defendant states that the resulting correspondence is relevant under Rule 26 because Plaintiff alleges that it entered into the parties' release agreement based upon the legal advice it received from Knechtel. Knechtel states that he did not draft the release because it was recommended by outside legal counsel (Denis), and that Yarbrough was aware that outside counsel had been consulted regarding the release. Thus, Defendant suggests that Denis' records are critical to the question of

3

whether "Knechtel simply conveyed to Zanfel the advice and recommendations of Attorney Denis or whether, as Zanfel contends, Knechtel induced Zanfel to act against its legal interests through false factual assertions and misguided legal advice." (Def.'s Mem., at 6). Plaintiff contends that it is immaterial whether Yarbrough received advice from Knechtel or Denis as Yarbrough testified he would not have executed a release had he known of Knechtel and Capriani's business relationship, regardless of the advice of any attorney.

In addition, Plaintiff objects to producing Denis' files on the basis of attorney-client privilege. A Privilege Log filed with the court lists seventeen items Plaintiff believes are protected from disclosure. Attorney-client privilege protects confidential communications made between clients and their attorneys for the purpose of securing legal advice. *Swidler & Berlin v. United States*, 524 U.S. 399 (1998). It is well established that a client may be either an individual or a corporation. *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981).

In terms of documents, the Seventh Circuit has adopted the following elements, as outlined by Wigmore, for determining whether a document comes within the purview of the attorney client privilege: 1) Where legal advice of any kind is sought, 2) from a professional legal adviser in his capacity as such, 3) the communication relating to that purpose, 4) made in confidence, 5) by the client, 6) are at this instance permanently protected, 7) from disclosure by himself or by the legal adviser, 8) except the protection by waived. *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983). Courts strictly confine the privilege within the narrowest possible limits. *Lawless*, 709 F.2d at 487. Therefore, courts generally require a document by document examination whereby the party asserting the privilege has the burden of establishing all of the essential elements. *White*, 970 F.2d at 334.

As noted in element eight, and specifically at issue in this case, the protections offered by the attorney client privilege may be waived. *Lama v. Preskill*, 818 N.E.2d 443, 448 (2nd. Dist. 2004).³ Waiver may be express or implied, and one instance of an implied waiver occurs when a party voluntarily introduces a factual or legal issue into a case, which can only be resolved upon an examination of the confidential communications. *Id.* Thus, when a client asserts claims or defenses that put his or her communications with a legal advisor at issue in a case, the attorney-client privilege is impliedly waived. *Id.* This is because the attorney-client privilege "cannot be used as both a shield and a sword" for it would be unfair to allow one party to claim reliance on an attorney's advice, while not allowing the other party to explore the substance of the advice. *United States v. Workman*, 138 F.3d 1261, 1264 (8th Cir. 1997). Indeed, when advice of counsel is raised as an issue in a case, the entirety of the attorney's advice on the same subject matter becomes discoverable, as does any corollary advice given by other attorneys on the same issue that relates to the reasonableness of the reliance on the other attorney's advice. *See, e.g., Johnson v. Rauland-Borg Corp.*, 961 F. Supp. 208, 211 (N.D. Ill. 1997); *In re Gaming Lottery Sec. Litig.*, 2000 U.S. Dist. LEXIS 3931 at *7-8 (S.D.N.Y. 2000).

In this case, the court finds that Zanfel impliedly waived its attorney-client privilege when it asserted that it relied on the advice of Knechtel in entering the release agreement as part of the basis for this lawsuit. The legal advice offered by Denis is relevant to the reasonableness of Knechtel's advice to Zanfel. Though Plaintiff tries to persuade the court that it did not waive its privilege because it never stated that it "exclusively" relied on Knechtel's advice and because it

---

³In a diversity of citizenship case such as this one, Illinois law governs issues concerning the attorney-client privilege. *Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.*, 176 F.R.D. 269, 271 (N.D. Ill. 1997).

was Knechtel who brought into question the existence of Denis' advice in this case, the court cannot escape the fact that Plaintiff intends to argue that its release agreement should be rescinded because it would not have entered into the release but for the advice and counsel of Knechtel. The advice of Knechtel is at issue in this case, making the advice of Denis relevant. It does not matter that Plaintiff may not have followed Knechtel's advice had it known of the business relationship between Capriani and Knechtel. Knechtel's and Denis' legal advice has been made an issue in this case, so Plaintiff cannot use the attorney-client privilege to deny Plaintiff discovery which is proper under Rule 26.

The court had reviewed each of the seventeen items described in Plaintiff's Privilege Log. Each item appears to pertain to legal advice about terminating the business relationship between Zanfel and Helix and the associated release agreement. No materials were logged that were unrelated to the subject matter of this lawsuit. No other client's privilege is asserted. Thus, the court finds that Plaintiff's reliance on the advice of counsel as a basis for its lawsuit defeats the protection of the attorney-client privilege raised for each of the seventeen documents that make up Plaintiff's Privilege Log. Plaintiff is to produce materials responsive to Defendant's Request 5 within seven days of receipt of this Order.

C.  **Request 6 (Zanfel Private Placement Memorandum)**

The last item requested by Defendant is a "Private Placement Memorandum" of the Zanfel corporation. Apparently, this Memorandum is a confidential document describing Plaintiff's business models, along with trade secrets and marketing plans, given to investors of Plaintiff.

Defendant seeks production of the Memorandum because Knechtel stated in his

deposition that Yarbrough wanted Knechtel to set up separate companies to avoid possible restriction and conditions imposed on him by the Memorandum. This fact is important to Defendant because Yarbrough claims he did not know about Knechtel's business deals with Capriani, while Knechtel testifies that it was Yarbrough who wanted him to organize separate companies because of the Memorandum, which is what Knechtel claims to have done with Capriani.

Plaintiff has already produced a copy of the Memorandum to defense counsel on an attorney's eyes only basis pursuant to the court's ruling of January 26, 2005. Plaintiff protests against further disclosure because the Memorandum contains none of the restrictions that Knechtel spoke about in his deposition, making further disclosure a needless intrusion into Plaintiff's confidential business information by the same party that has been alleged to be part of a civil conspiracy to defraud Plaintiff.

Defendant states that the Memorandum is relevant discovery because it is potentially dispositive on the issue of Helix's liability in connection with Zanfel's charge of civil conspiracy. Defendant also states that a Protective Order would satisfy Plaintiff's privacy concerns. Such a Protective Order was entered on January 26, 2005.

Parties were given until February 9, 2005, to comment on production, but Defendant has not informed the court about whether the Memorandum contained the information it was seeking or not. Having received no new indication of Defendant's need to further compel production of the Memorandum, this court leaves the attorney's eyes only restriction in place and denies any further relief under Defendant's Motion.

## III. Conclusion

For the foregoing reasons, Defendant's Motion for Aid in Discovery is granted in part and denied in part. Plaintiff shall produce materials responsive to Request 4 and 5 within seven days of receipt of this Order. Defendant's Motion compelling further production of the Private Placement Memorandum is denied. All disclosures are subject to the parties' agreed confidentiality stipulation.

ENTER:

P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: 2/22/05